UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| **Arthur Diamond**, on behalf of himself and others similarly situated; **Jeffrey Schawartz** and **Sandra H. Ziegler**, on behalf of themselves others similar situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Pennsylvania State Education Association**; **Chestnut Ridge Education Association**, as representative of the class of all chapters and affiliates of the Pennsylvania State Education Association; **National Education Association**; **Tom Wolf**, in his official capacity as governor of Pennsylvania; **Josh Shapiro**, in his official capacity as Attorney General of Pennsylvania; **James M. Darby**, **Albert Mezzaroba**, and **Robert H. Shoop Jr.**, in their official capacities as chairman and members of the Pennsylvania Labor Relations Board; **Lesley Childers-Potts**, in her official capacity as district attorney of Bedford County, and as representative of the class of all district attorneys in Pennsylvania with the authority to prosecute violations of 71 Pa. Stat. § 575,<br><br>Defendants. | Case No. _____<br><br><br><br><br><br><br><br><br><br><br>**Complaint—Class Action** |

Arthur Diamond, Jeffrey Schwartz, and Sandra H. Ziegler are current or former public-school teachers who bring this class action on behalf of those who have been required to pay "fair-share fees" to the Pennsylvania State Education Association

(PSEA), its affiliates, or a union-approved charity. The defendants have violated the plaintiffs' constitutional rights by requiring them to pay these "fair-share fees" as a condition of their employment, even though the plaintiffs do not belong to the union and do not wish to subsidize the union's activities in any way.

The representative plaintiffs bring suit on behalf two separate classes. The first class consists of "agency-fee payers." These are employees who refuse to join the PSEA but are nevertheless compelled to pay "fair-share fees" to the union or its affiliates as a condition of their employment. *See* 71 Pa. Stat. § 575(b)–(c) (attached as Exhibit 1). Mr. Diamond is an "agency-fee payer" who remits his "fair-share fees" directly to the union, and he sues as class representative for all current and former agency-fee payers to the PSEA.

The second class consists of "religious objectors." These are employees who object to the PSEA's activities on religious grounds, and are therefore allowed to direct their mandatory "fair-share fees" to a nonreligious, union-approved charity rather than the union itself. *See* 71 Pa. Stat. § 575(e), (h). Mr. Schwartz and Ms. Ziegler are "religious objectors," whose "fair-share fees" have been diverted to a third-party charity, and they sue as class representatives for all such current and former religious objectors to the PSEA.

## JURISDICTION AND VENUE

1.   The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2.   Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3.   Assignment to the Johnstown Division is proper because Ms. Ziegler resides in Bedford County. *See* Local Civil Rule 3. In addition, Ms. Ziegler's claims against the defendants arose in Bedford County, where she worked as school teacher. *See id.*

## PARTIES

4.    Plaintiff Arthur Diamond resides in Chester County, Pennsylvania.

5.    Plaintiff Jeffrey Schwartz resides in Cumberland County, Pennsylvania.

6.    Plaintiff Sandra H. Ziegler resides in Bedford County, Pennsylvania.

7.    Defendant Pennsylvania State Education Association (PSEA) is a labor union whose headquarters are located at 400 North 3rd Street, Harrisburg, Pennsylvania, 17105-1724.

8.    Defendant Chestnut Ridge Education Association is a local union chapter affiliated with the PSEA. It is sued as representative of the class of all chapters and affiliates of the PSEA.

9.    Defendant National Education Association (NEA) is a labor union whose headquarters are located at 1201 16th Street NW, Washington, D.C. The NEA is affiliated with the PSEA.

10.    Defendant Tom Wolf is the governor of Pennsylvania. His office is in Harrisburg, Pennsylvania. Governor Wolf is the representative of the State and he is sued in his official capacity.

11.    Defendant Josh Shapiro is the Attorney General of Pennsylvania. His office is in Harrisburg, Pennsylvania. He is charged with enforcing the state's laws, including 71 Pa. Stat. § 575, which the plaintiffs are challenging as unconstitutional. He is sued in his official capacity.

12.    Defendant James M. Darby is chairman of the Pennsylvania Labor Relations Board, and defendants Albert Mezzaroba and Robert H. Shoop Jr. are members of the Pennsylvania Labor Relations Board. They are charged with enforcing the State's private and public-sector collective-bargaining laws, including 71 Pa. Stat. § 575, and they are sued in their official capacities.

13.    Defendant Lesley Childers-Potts is the district attorney of Bedford County. She is responsible for prosecuting violations of 71 Pa. Stat. § 575. She is sued in her

official capacity and as representative of the class of all district attorneys in Pennsylvania with the authority to prosecute violations of 71 Pa. Stat. § 575.

## FACTS

14.   Mr. Diamond is a public-school teacher in the Chichester School District, where he has taught since 1990. Mr. Diamond refuses to join the PSEA or its affiliates because he disapproves of their political advocacy as well as the excessive salaries paid to even low-ranking members of the state union and its national affiliate.

15.   Mr. Schwartz is a public-school teacher in the South Middleton School District. He has taught in the Pennsylvania public schools since 1992. Mr. Schwartz refuses to join the PSEA or its affiliates because the union advocates for policies that contradict his religious beliefs.

16.   Ms. Ziegler is a retired public-school teacher who taught at Chestnut Ridge Middle School in Bedford County for 24 years. Ms. Ziegler refused to join the PSEA or its affiliates because the union advocates for policies that contradict her religious beliefs.

17.   Nevertheless, the collective-bargaining agreements negotiated by the PSEA have compelled the representative plaintiffs and their fellow objectors to pay a financial penalty for exercising their constitutional right to not join a union. Nonunion members must either: (1) Pay a "fair-share fee" directly to the union; or (2) Pay the equivalent of the "fair-share fee" to a nonreligious charity approved by the union. *See* 71 Pa. Stat. § 575(e), (h). Option (2) is available only to those who object to the union's activities on "bona fide religious grounds." 71 Pa. Stat. § 575(e)(2), (h); *see also* 29 U.S.C. § 169.

18.   Mr. Diamond has chosen option (1), and he has been compelled to pay a "fair-share fee" to PSEA and its affiliates as a condition of his employment.

19. Mr. Schwartz and Ms. Ziegler, on the other hand, have been treated as "religious objectors," so their "fair-share fees" are supposed to be given to a union-approved charity rather than the union itself.

20. When Mr. Schwartz started teaching in 1992, he was not compelled to pay "fair-share" fees as a nonmember of the union. When "fair-share fees" became a requirement in his school district's collective-bargaining agreement, he immediately took religious-objector status and has paid his "fair-share fees" to a union-approved charity ever since.

21. When Ms. Ziegler became subject to "fair-share fees" in 2006, she obtained "religious objector" status and was told she could donate her "fair-share fees" to a union-approved charity. Ms. Ziegler refused to specify a charity and refused to authorize the union to release the "fair-share fees" it had taken from her paycheck. Shortly before Ms. Ziegler retired, she received a letter from the union informing her that her previously paid "fair-share fees" were sitting in an account waiting to be donated. To Ms. Ziegler's knowledge, the union is still holding this money in escrow.

## STATEMENT OF THE CLAIM

22. The PSEA's compelled extraction of money from the representative plaintiffs and their fellow class members violates their constitutional rights—regardless of whether union keeps the money for itself or directs it toward a union-approved charity.

23. Mr. Diamond, for example, does not wish to pay a "fair-share fee" to the PSEA because he disapproves of PSEA's activities and does not wish to subsidize them in any way. The compelled subsidy that Mr. Diamond and his fellow "agency-fee payers" must pay to the PSEA as a condition of their employment violates their constitutional rights.

24.   Although the PSEA allows agency-fee payers to insist that their "fair-share fees" will be used only to support the union's collective-bargaining activities and not its political advocacy, this does not alleviate the defendants' constitutional violations. A public-employee union's collective-bargaining activities are no less political than its lobbying and electioneering activities, as all of these actions are directed at the government and seek to influence government policy. *See Harris v. Quinn*, 134 S. Ct. 2618, 2632–33 (2014). In addition, money is fungible, so when Mr. Diamond and his fellow class members are forced to subsidize the PSEA's collective-bargaining activities, they are freeing up resources for the PSEA to spend on political and ideological activities. Finally, Mr. Diamond does not wish to subsidize *any* of PSEA's activities, and his compelled support of PSEA's collective-bargaining activities and the excessive salaries that the union pays to its officers is no less an affront than the compelled support of PSEA's political and ideological advocacy.

25.   The accommodations that the PSEA offers to "religious objectors" such as Mr. Schwartz and Ms. Zieger are likewise inadequate and unconstitutional. The PSEA's demand that religious objectors pay money to a union-approved charity if they refuse to join or support the union violates the constitutional rights of religious objectors. Mr. Schwartz and Mr. Ziegler have a constitutional right to refrain from joining or lending financial support to a public-employee union, and they cannot be subject to any type of financial penalty for their decision, regardless of who ultimately collects the money.

26.   The law of Pennsylvania authorizes the PSEA to extract "fair-share fees" from nonmembers as a condition of their employment. *See, e.g.,* 71 Pa. Stat. § 575 (attached as Exhibit 1). These state laws are unconstitutional to the extent that they allow public-employee unions to impose "fair-share fees" on nonmembers, regardless of whether those "fair-share fees" are directed to the union or a third-party entity.

27.   The PSEA is acting under color of state law by imposing these "fair-share fees" on non-union members. *See* 71 Pa. Stat. § 575.

28.   The PSEA has committed the tort of conversion by appropriating the money of the representative plaintiffs and the their fellow class members without their consent. The PSEA cannot defend its tortious conduct by relying on 71 Pa. Stat. § 575, because this statute is unconstitutional to the extent it purports to shield the PSEA's compelled extraction of money from non-union members. Unconstitutional statutes cannot confer immunity on tortious conduct.

## CLASS ACTION STATEMENT—AGENCY-FEE PAYERS

29.   Mr. Diamond seeks to represent a class of "agency-fee payers" under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(3). This class includes all individuals who: (1) are or previously were employed by the State of Pennsylvania or any of its subunits, including any school district in the State; (2) are or were members of bargaining units represented by the PSEA or its chapters or affiliates, yet chose not to become members of the PSEA by not signing membership cards or by choosing to become agency-fee payers, for any period of time; and (3) have had any "agency fees" or "fair-share fees" remitted to PSEA or its affiliates. The class includes everyone who has ever fallen within this definition, including retired teachers and teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

30.   The PSEA represents approximately 187,000 school employees, and we estimate that approximately 4% of school employees have opted out of union membership and become "agency-fee payers." That puts the size of the proposed agency-fee payer class at approximately 7,480 plaintiffs. Including retired and former teachers will push the number even higher.

31. The number of persons in the agency-fee payer class makes joinder of the individual class members impractical.

32. Because each class member is an "agency-fee payer" who was compelled to pay money to the PSEA as a condition of his employment, there are numerous questions of law common to each member of the class. These include:

- Whether public-employee union shops are constitutionally permissible. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466.

- Whether the class members can recover compensatory damages from the PSEA and its affiliates for "fair-share fees" that were collected before *Janus*.

- Whether and to what extent any statute of limitations might limit the recovery of class members.

- Whether and to what extent the laws of Pennsylvania that enforce public-employee union shops can survive the Supreme Court's anticipated ruling in *Janus*.

33. Mr. Diamond's claims are typical of other class members, as both he and each class member has objected to PSEA membership yet was subject to "fair-share fees" despite their refusal to join the union.

34. Mr. Diamond adequately represents the interests of his fellow class members, and he has no interests antagonistic to the class. Mr. Diamond seeks to maximize recovery for his fellow agency-fee payers—a goal shared by all members of the class—and there are no conflicts between Mr. Diamond and the other agency-fee payers.

35. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

36. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of compulsory "fair-share fees" will, as a practical matter, be dispositive of the interests of all class members.

A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

### CLASS ACTION STATEMENT—RELIGIOUS OBJECTORS

37. Mr. Schwartz and Ms. Zeigler seek to represent a class of "religious objectors" under Fed. R. Civ. P. 23(b)(1), (b)(2), and (b)(3). The class includes all individuals who: (1) are or were employed by the State of Pennsylvania or any of its subunits, including any school district in the State; (2) are or were members of bargaining units represented by the PSEA or its chapters or affiliates; and (3) are or were religious objectors to the PSEA who elected to have their "fair-share fees" given to a union-approved charity rather than the union itself. The class includes everyone who has ever fallen within this definition, including retired teachers and teachers who have moved to other States, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

38. We estimate that there are approximately 300 religious objectors in Pennsylvania who have opted out of PSEA membership and directed their "fair-share dues" to a union-approved charity. This estimate does not include retired or former teachers, which would make the class larger.

39.  The number of persons in the religious-objector class makes joinder of the individual class members impractical.

40.  Because each class member is an "religious objector" who was compelled to pay money to a union-approved charity as a condition of his employment, there are numerous questions of law common to each member of the class. These include:

- Whether public-employee union shops are constitutionally permissible. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466.

- Whether the Constitution allows public-employee unions and state officials to preserve public-employee union shops post-*Janus* by compelling non-union members to direct their "fair-share fees" to a union-approved charity rather than the union itself.

- Whether religious objectors can recover compensatory damages from the PSEA and its affiliates for "fair-share fees" that were diverted to union-approved charities.

- Whether and to what extent any statute of limitations might limit the recovery of class members.

- Whether and to what extent the laws of Pennsylvania that purport to accommodate religious objectors can survive the Supreme Court's anticipated ruling in *Janus*.

41.  Mr. Schwartz and Ms. Zeigler's claims are typical of other class members, as both they and their fellow class members have objected to PSEA membership and support on religious grounds, yet were subject to monetary penalties for exercising their constitutional right not to join or financially support a public-employee union.

42.  Mr. Schwartz and Ms. Zeigler adequately represent the interests of their fellow class members, and they have no interests antagonistic to the class. Mr. Schwartz and Ms. Zeigler seek to maximize recovery for their fellow religious objectors—a goal shared by all members of the class—and there are no conflicts between Mr. Schwartz and Ms. Zeigler and the other religious objectors.

43. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

44. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of compulsory "fair-share fees" will, as a practical matter, be dispositive of the interests of all class members.

45. A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violation of their constitutional rights, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CAUSES OF ACTION

46. The representative plaintiffs are suing the PSEA, Governor Wolf, Attorney General Shapiro, the state labor board officials, and the district attorneys under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

47. The representative plaintiffs are also suing the PSEA under the state-law tort of conversion, and they invoke the supplemental jurisdiction of this court over that state-law claim. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF

48. Mr. Dimaond, Mr. Schwartz, and Ms. Ziegler respectfully request that the court:

a.      certify a class of all nonunion "agency-fee payers" who have been forced to pay "fair-share fees" to PSEA or its affiliates as a condition of their employment;

b.      certify a separate class of all "religious objectors" who have opted out of PSEA membership and have chosen to have their "fair-share fees" remitted to a union-approved charity rather than the union itself;

c.      declare that the representative plaintiffs and their fellow class members have a constitutional right to decline to join or financially support a public-employee union, and that they cannot be penalized or forced to pay money to the union or a third-party entity as a consequence for exercising this constitutional right;

d.      declare that state tort law protects the right of the representative plaintiffs and their fellow class members not to have their wages garnished or redirected by the PSEA without their affirmative, written consent, and that any federal or state law or collective-bargaining agreement that purports to override these protections of state tort law by allowing the PSEA to help itself to the wages and paychecks of school employees—or that compels school employees to consent the garnishment of their wages by the PSEA as a condition of their employment—is unconstitutional and without legal effect;

e.      declare 71 Pa. Stat. § 575(b) unconstitutional to the extent it allows public-employee unions to extract "fair-share fees" from nonmembers, and permanently enjoin Governor Wolf, Attorney General Shapiro, the state labor board officials, the district attorneys, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(b) in this unconstitutional manner;

f.    declare 71 Pa. Stat. § 575(c) unconstitutional to the extent it allows a public-employee union to garnish a nonmember's wages or deduct money from a nonmember's salary or paycheck without first securing the nonmember's affirmative, written consent, and permanently enjoin Governor Wolf, Attorney General Shapiro, the state labor board officials, the district attorneys, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(c) in this unconstitutional manner;

g.    declare 71 Pa. Stat. § 575(e)(1) unconstitutional because it prohibits nonmembers from objecting to a "fair-share fee" imposed by a public-employee union unless they do so within the 40-day window described in 71 Pa. Stat. § 575(e), and permanently enjoin Governor Wolf, Attorney General Shapiro, the district attorneys, the state labor board officials, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(e)(1) as applied to public-employee unions;

h.    declare 71 Pa. Stat. § 575(e)(2) unconstitutional because it prohibits bona fide religious objectors from withdrawing their financial support of a public-employee union unless they do so within the 40-day window described in 71 Pa. Stat. § 575(e), and permanently enjoin Governor Wolf, Attorney General Shapiro, the state labor board officials, the district attorneys, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(e)(2) as applied to public-employee unions;

i.   declare 71 Pa. Stat. § 575(g) unconstitutional to the extent it permits an arbitrator to override the constitutional rights of nonmembers who refuse to join or financially support a public-employee union;

j.   declare 71 Pa. Stat. § 575(h) unconstitutional because it forces bona fide religious objectors to pay money to a union-approved charity and penalizes them for exercising their constitutional right not to join or financially support a public-employee union, and permanently enjoin Governor Wolf, Attorney General Shapiro, the state labor board officials, the district attorneys, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(h);

k.   declare 71 Pa. Stat. § 575(h) unconstitutional and contrary to the Supreme Court's ruling in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), because it categorically disqualifies religious charities from receiving a nonunion member's fair-share fees, and permanently enjoin the PSEA, Governor Wolf, Attorney General Shapiro, the state labor board officials, the district attorneys, and all of their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(h)'s exclusion of religious charities;

l.   declare 71 Pa. Stat. § 575(m) unconstitutional to the extent it threatens monetary fines and imprisonment on those who refuse to join or financially support a public-employee union, or who refuse to pay money to a union-approved charity as a penalty for exercising this constitutional right, and permanently enjoin Governor Wolf, Attorney General Shapiro, the state labor board officials, the district attorneys, and all of their officers, agents, servants, employees, attorneys,

and any other person or entity in active concert or participation with them, from enforcing 71 Pa. Stat. § 575(m) in this unconstitutional manner;

m.   declare that all collective-bargaining agreements that compel non-union members to pay "fair-share fees" to a union or a third-party entity violate the constitutional rights of the representative plaintiffs and their fellow class members;

n.   order the National Education Association, the Pennsylvania State Education Association, and all of its chapters and affiliates to repay all "fair-share fees" that they unconstitutionally extracted from the representative plaintiffs and their fellow class members—regardless of whether the union kept those funds for itself or diverted those funds toward union-approved charities or other third-party entities, along with pre-judgment and post-judgment interest;

o.   permanently enjoin the Pennsylvania State Education Association and its affiliates, along with its officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with it, from taking or redirecting any type of money from the representative plaintiffs and their fellow class members without first obtaining their affirmative, written consent;

p.   permanently enjoin all of the defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from enforcing any provision of federal or Pennsylvania law, or any provision of a collective-bargaining agreement, that requires the payment of money as a consequence for exercising one's constitutional right not to join or financially support a public-employee union, regardless of whether that

compelled payment of money is collected by the union itself or di-
verted to a third-party entity;

q.   permanently enjoin all of the defendants, along with their officers,
agents, servants, employees, attorneys, and any other person or entity
in active concert or participation with them, from enforcing any pro-
vision of federal or Pennsylvania law, or any provision of a collective-
bargaining agreement or union-membership agreement, that prevents
or deters public employees from cancelling their union membership
and withdrawing financial support of the union at any time during the
calendar year;

r.   award costs and attorneys' fees under 42 U.S.C. § 1988;

s.   grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

 /s/ Sean Logue 
JONATHAN F. MITCHELL*              SEAN LOGUE
Bar No. TX 24075463               Bar No. PA 208221
Mitchell Law PLLC                 Logue Law PLLC
106 East Sixth Street, Suite 900  27 West Main Street
Austin, Texas 78701               Carnegie, Pennsylvania 15106
(512) 686-3940                    (412) 389-0805
jonathan@mitchell.law             sean@seanloguelaw.com

* *pro hac vice* application pending

Dated: June 15, 2018              *Counsel for Plaintiffs and*
                                  *the Proposed Class*