IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHNSTOWN DIVISION

| | |
|---|---|
| **Arthur Diamond**, on behalf of himself and others similarly situated; **Jeffrey Schawartz** and **Sandra H. Ziegler**, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | Case No. 3:18-cv-00128-KRG |
| v. | Judge Kim R. Gibson |
| **Pennsylvania State Education Association,** et al., | |
| Defendants. | |
| | *Filed Electronically.* |

**BRIEF IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE
     MOOT OR OTHERWISE NONJUSTICIABLE ........................................................ 5

     A.   All Claims for Declaratory or Injunctive Relief with Respect to the
          Constitutionality or Legality of Fair Share Fees (Including Religious Objector
          Fees) are Moot as a Result of the Supreme Court's Decision in Janus
          [Demand for Relief ¶¶ c, d, e, f, g, h, i, j, k, l, m, o, p] .................................... 6

     B.   Plaintiffs Have No Standing to Seek to Enjoin Provisions Concerning Union
          Membership [Demand for Relief ¶ q] ............................................................. 11

II.  PLAINTIFFS' DEMAND FOR REPAYMENT OF FAIR SHARE FEES
     COLLECTED PRIOR TO JANUS IS BARRED BY THE § 1983 GOOD-FAITH
     DEFENSE TO LIABILITY FOR DAMAGES ......................................................... 12

     A.   The Courts – Including the Third Circuit – Have Uniformly Recognized the
          Availability to Private Parties Sued under § 1983 of a Good-Faith Defense to
          Liability for Damages ..................................................................................... 13

     B.   Reliance on Presumptively Valid State Law and Controlling Supreme Court
          Precedent in Receiving Fair Share Fees Prior to Janus was Objectively
          Reasonable and thus in Good Faith ................................................................ 16

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION, WHICH – TO
     THE EXTENT IT SEEKS DAMAGES – WOULD ALSO BE BARRED BY THE
     GOOD-FAITH DEFENSE .................................................................................... 20

     A.   The Complaint Fails to State a Claim for Conversion .................................... 20

     B.   Any Claim for Repayment of Fair Share Fees is Barred by the Good-Faith
          Defense to Liability under State Law ............................................................. 23

IV.  BECAUSE PLAINTIFF ZIEGLER LACKS STANDING TO BRING ANY CLAIM,
     BOTH SHE AND DEFENDANT CREA MUST BE DISMISSED FROM THE
     LAWSUIT ............................................................................................................ 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) .................................................... 1, 2, 3

*Adukia v. Finney*, 735 N.E.2d 174 (Ill. App. Ct. 2000) ................................................................ 24

*Agostini v. Felton*, 521 U.S. 203 (1997) ........................................................................................ 18

*Aikens v. California*, 406 U.S. 813 (1972)........................................................................................ 8

*Americans United v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406 (8th Cir. 2007).............. 15

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ...................................................... 8

*Austin v. Campbell*, 370 P.2d 769 (Ariz. 1962) ............................................................................. 24

*Birdsall v. Smith*, 122 N.W. 626 (Mich. 1909) ......................................................................... 16, 23

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016)....................................................................... 11

*Brown v. Philadelphia Housing Auth.*, 350 F.3d 338 (3d Cir. 2003) ........................................... 11

*Butzlaff v. Van Der Geest & Sons, Inc.*, 340 N.W.2d 742 (Wis. Ct. App. 1983) ........................ 24

*Carlson v. United Academics*, 265 F.3d 778 (9th Cir. 2001)......................................................... 10

*Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986) ........................................................... 17

*Christian Coalition v. Cole*, 355 F.3d 1288 (11th Cir. 2004) ......................................................... 9

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................................... 6

*Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008)........................................................ 15

*Coalition for Gov't Procurement v. Federal Prison Indus., Inc.*, 365 F.3d 435 (6th Cir. 2004) ............................................................................................................................................ 8

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)................................................................... 6

*Danielson v. Inslee*, No. 3:18-cv-05206-RJB, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018) ........................................................................................................................................... 8

*Dougherty v. School Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014) .............................................. 19

*Downs v. Jacobs*, 272 A.2d 706 (Del. 1970) ................................................................................. 23

*Dutch Point Credit Union, Inc. v. Caron Auto Works, Inc.*, 648 A.2d 882 (Conn. App. Ct. 1994) ........................................................................................................................................... 24

*Ellis v. Bhd. of Ry. Clerks*, 466 U.S. 435 (1984) ......................................................................... 17

*Franklin v. Fox*, No. C 97-2443, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ......................... 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)....................... 6, 10

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ............................................ 8

*Gould Electronics Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000)......................................... 4

*Grutzmacher v. Howard Cty.*, 851 F.3d 332 (4th Cir. 2017)....................................................... 10

*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) .................................................. 13, 16

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) ........................................................................... 16, 18

*Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ..................................................................................................................................... 16

*Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67 (1983) ...................................................... 6

*Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (June 27, 2018) ........................................ passim

*Jarvis v. Cuomo*, 137 S. Ct. 1204 (2017) ........................................................................... 15, 16

*Jarvis v. Cuomo*, 660 F. App'x 72 (2d Cir. 2016) ............................................................... 15, 16

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994) ..................... 14, 17

*Kimble v. Bender*, 196 A. 409 (Md. 1938) ............................................................................ 23

*Kingston Coal Co. v. Felton Min. Co.*, 690 A.2d 284 (Pa. Super. Ct. 1997) .......................... 25

*Knox v. SEIU*, 567 U.S. 298 (2012) ...................................................................................... 18

*Laborers' Combined Funds v. Jennings*, 323 F.R.D. 511 (W.D. Pa. 2018) .......................... 20, 21

*Lang v. City of Bayonne*, 68 A. 90 (N.J. 1907) ..................................................................... 23

*Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991) .......................................................... 17

*Lemon v. Kurtzman*, 411 U.S. 192 (1973) ............................................................................ 15

*Locke v. Karass*, 555 U.S. 207 (2009) .................................................................................. 17

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ............................................................... 13, 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 11, 12, 17, 23

*Lusardi v. Xerox Corp.*, 975 F.2d 964 (3d Cir. 1992) ............................................................ 11

*Marckel v. Zitzow*, 15 N.W.2d 777 (Minn. 1944) .................................................................. 24

*Michigan City v. Brossman*, 11 N.E.2d 538 (Ind. App. 1937) ............................................... 24

*Miranda v. Arizona*, 384 U.S. 436 (1964) ........................................................................... 19

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996) ....................................................... 15, 16, 17, 23

*Pioneer Commercial Funding Corp. v. American Fin. Mortg. Corp.*, 855 A.2d 818 (Pa. 2004) ..................................................................................................................................... 21

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) ............................................. 9

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) ........................................................ 13

*Richardson v. McKnight*, 521 U.S. 399 (1997) ..................................................................... 14

*Richman ex rel. Inst. of Terrorism Research & Response, Inc. v. Perelman*, No. 953 EDA 2014, 2015 WL 3500537 (Pa. Super. Ct. Apr. 21, 2015) ...................................................... 20

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ...................... 18

*Routh v. SEIU Healthcare 775NW*, No. 16-35749 (9th Cir.) ................................................... 16

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ............................................................ 12

*Smith v. Univ. of Wash.*, 233 F.3d 1188 (9th Cir. 2000)........................................... 8

*State v. Village of Garden City*, 265 P.2d 328 (Idaho 1953) ...................................... 24

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014). .................................... 6

*Tarantino v. Syputo*, No. C 03-03450 MHP, 2006 WL 1530030 (N.D. Cal. June 2, 2006)......... 22

*Trautman v. Lagalski*, 28 F. Supp. 2d 327 (W.D. Pa. 1998) ............................... 12, 25

*Troiano v. Supervisor of Elections*, 382 F.3d 1276 (11th Cir. 2004) ........................ 9

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968) ............ 10

*United States v. Dickerson,* 530 U.S. 428 (2000) ...................................................... 19

*United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001) .......................................... 18

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)............................................... 8

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996) ......... 14

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................................... 25

*Weldon v. Conlee*, No. 1:13-CV-00540-LJO-SAB, 2015 WL 1811882 (E.D. Cal. Apr. 21, 2015) ............................................................................................................... 22

*White v. Arkansas Capital Corp./Diamond State Ventures*, 226 S.W.3d 825 (Ark. 2006) .......... 24

*Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ............... 16

*Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006)................................................. 10

*Wisconsin Right to Life v. Schober*, 366 F.3d 485 (7th Cir. 2004) .......................... 11

*Wyatt v. Cole*, 504 U.S. 158 (1992) ...................................................... 13, 14, 17, 23

*Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993) ....................................................... 14

**Statutes**

29 U.S.C. § 158(a)(3)............................................................................................... 2

42 Pa. C.S.A. § 5524 ............................................................................................. 25

42 U.S.C. § 1983.......................................................................................... passim

71 Pa. Stat. § 575 ......................................................................................... 2, 6, 16

71 Pa. Stat. § 575(b) ............................................................................................. 21

71 Pa. Stat. § 575(c) ......................................................................................... 3, 21

71 Pa. Stat. § 575(d) ............................................................................................... 3

71 Pa. Stat. § 575(e) ............................................................................................... 3

71 Pa. Stat. § 575(f) ................................................................................................ 3

71 Pa. Stat. § 575(g) ............................................................................................... 3

71 Pa. Stat. § 575(h).............................................................................................. 3

iv

71 Pa. Stat. § 575(i)..................................................................................................................... 3

**Other Authorities**

Nahmod, Sheldon, *The Emerging Section 1983 Private Party Defense*, 26 Cardozo L.
    Rev. 81 (2004) ..................................................................................................................... 15

**Rules**

Federal Rules of Civil Procedure 12(b)(1)...................................................................... 1, 5, 6, 25

Federal Rules of Civil Procedure 12(b)(6)......................................................................... 1, 5, 25

Federal Rules of Civil Procedure 12(d) .................................................................................... 25

## INTRODUCTION

This lawsuit was brought by three plaintiffs in mid-June, 2018, in advance of the decision rendered by the United States Supreme Court some two weeks later in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (June 27, 2018) . In *Janus*, the Court overruled its 40-year-old precedent in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), in which the Court had held that public employees who declined to become dues-paying members of the union that represents their bargaining unit could, consistent with the First Amendment, be required as a condition of employment to contribute their proportionate share of the union's costs of collective bargaining and contract administration. Overturning that holding, *Janus* established the rule that such "fair share" fee requirements were unconstitutional in the public sector.

Plaintiffs' complaint seeks two principal forms of relief. First, the complaint asserts multiple variations of the demand that fair share requirements be declared unconstitutional and enjoined – an issue the Supreme Court has already settled in *Janus*. Second, plaintiffs ask that the unions that for years were allowed to assess and collect fair share fees under a Pennsylvania statute and in reliance on *Abood* be required to repay all such fees they have ever collected – apparently without regard to any statute of limitations, and in any event without regard for the unions' justified reliance on state law and Supreme Court precedent.

Defendants Pennsylvania State Education Association ("PSEA"), National Education Association ("NEA"), and Chestnut Ridge Education Association ("CREA") (collectively, the "Union Defendants") respectfully ask the Court, pursuant to Rules 12(b)(1) & (6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' lawsuit in its entirety. As we explain below, the complaint's demands for declaratory and injunctive relief are either moot or otherwise nonjusticiable, and the demand for repayment of fair share fees assessed at a time when such fees

were authorized and deemed constitutional under controlling law fails to state a claim for relief

in light of the good-faith defense to liability for damages available to private parties sued under

42 U.S.C. § 1983. And, to the extent plaintiffs seek to avoid that result by asserting a claim for

conversion under state tort law, they both fail to state a claim for conversion and run afoul of the

state-law equivalent of the § 1983 good-faith defense.

## BACKGROUND

Since 1988, Pennsylvania law has provided that a labor union certified as the exclusive

representative of a bargaining unit of public employees may enter into an agreement with the

public employer whereby any members of the bargaining unit who choose not to become dues-

paying union members can be required, as a condition of employment, to pay a "fair share fee"

(sometimes called an "agency fee"), equivalent to the portion of union dues that goes for the

union's costs of negotiating and enforcing the collective bargaining agreement. *See* 71 Pa. Stat.

§ 575. In authorizing such fair share requirements, Pennsylvania law followed that of many other

states as well as (with respect to the private sector) the National Labor Relations Act, *see* 29

U.S.C. § 158(a)(3), in recognizing that – where the union had a legal duty "to 'represen[t] the

interests of all public employees in the unit,' whether or not they are union members," *Janus*,

138 S. Ct. at 2467 – it was fair to require those who declined to join the union to help pay the

costs of collective bargaining and contract administration that benefited both members and

nonmembers. In 1977, the Supreme Court had upheld the constitutionality of such requirements,

explaining that as long as the fee was limited to the costs of collective bargaining and contract

administration, to the exclusion of political or ideological activities, requiring non-union

employees to pay their share of those costs did not violate their First Amendment rights to

freedom of speech and association. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).

The Pennsylvania statute that allowed for fair share fees contained provisions specifying that if a fair share requirement is negotiated in the collective bargaining agreement, "[t]he public employer shall deduct the fee … [from the nonmembers' salary or wages] and promptly transmit the amount deducted to the exclusive representative." 71 Pa. Stat. § 575(c). The statute also contained procedures under which a nonmember may challenge the amount of the fee, *id.*, § 575 (d)-(i), and it allowed nonmembers who objected to supporting a union on religious grounds instead to direct their fair share fee to "a nonreligious charity agreed upon by the nonmember and the exclusive representative." *Id.*, § 575 (e), (h), (i).

This lawsuit was brought against PSEA, its national affiliate NEA, and one of its local affiliates, CREA (as well as certain public officials). Complaint ¶¶ 7-9. The three plaintiffs, all current or retired teachers, allege that they were required to pay fair share fees as nonmembers of the union. *Id.*, ¶¶ 14-21. Plaintiffs Schwartz and Ziegler were religious objectors who were permitted to direct their fair share equivalent to a charity instead of to the union. *Id.*, ¶¶ 19-21.

On June 27, 2018, the Supreme Court issued its ruling in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). By a 5-4 vote, the Court overruled *Abood* and held that public employees could not constitutionally be required to pay fair share fees.

In light of the *Janus* decision, the Union Defendants recognized that the Pennsylvania statute authorizing fair share fees had become unenforceable, and they immediately took steps to stop collection of such fees. On the day of the decision, PSEA contacted every school employer with which a PSEA affiliate had a contractual fair share clause, notifying them of the *Janus* decision and instructing them immediately to cease deducting fair share fees from their

employees' paychecks. *See* Declaration of Joseph Howlett, ¶ 5.[1] Where school employers had already deducted and transmitted the portions of their employees' fees attributable to the period after June 27 (*i.e.*, the last two months of the school year), or were unable to modify a post-June 27 payroll, PSEA established procedures to refund such fees to the nonmember feepayers (including religious objectors), with interest. *Id.*  On July 2, 2018, PSEA sent letters to every fair share feepayer explaining the *Janus* decision, informing them that PSEA had contacted employers and asked them to immediately stop payroll deduction of fair share fees, and notifying the feepayers that any fees that had been paid for the period after June 27, 2018 would be promptly refunded. *Id.* at ¶ 5 & Exh. A. Such letters went to plaintiffs Diamond and Schwartz, and both have received or will shortly receive checks refunding to them the portion of their fair share fees that had been deducted and transmitted by their school district employers prior to June 27, but that was attributable to the period from June 27 to August 31, 2018. *Id.*, ¶¶ 6-7. Plaintiff Ziegler, on the other hand, has been retired and thus has been required to pay no fair share fees at all since 2013. *See* Declaration of Nadine Glass ¶¶ 6-7; *infra* Part IV.

The school employers have similarly recognized that statutory and contractual provisions authorizing fair share requirements are no longer enforceable after *Janus*, and representatives of the three school districts that employ or employed the plaintiffs have provided affidavits attesting that as a result of the *Janus* decision they have ceased deducting and transmitting fair share fees, and that in compliance with *Janus* they will not do so in the future. Kudlawiec Decl. ¶¶ 5-6; Ulmer Decl. ¶¶ 5-6; Puckett Decl. ¶¶ 5-6.

---

[1] The declarations and exhibits submitted with this brief and cited herein are proffered solely in support of the argument in Parts I and IV that certain claims of the complaint should be dismissed for lack of jurisdiction under Rule 12(b)(1). The Court is permitted to consider evidence outside the pleadings in ruling on 12(b)(1) motions. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176-77 (3d Cir. 2000).

**ARGUMENT**

As we first explain, the bulk of plaintiffs' claims, which seek declaratory and injunctive relief with respect to the collection of fair share fees, are moot as a result of the *Janus* decision and the resulting cessation or imminent refund of all such fee assessments (Part I.A). And, to the extent plaintiffs seek to enjoin provisions governing union membership, they lack standing to do so (Part I.B). All such claims must thus be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. That leaves the demand that the Union Defendants repay fair share fees that were assessed and collected – and expended for the benefit of the entire bargaining unit, including nonmembers such as the plaintiffs – prior to the *Janus* decision. That claim must be dismissed under Rule 12(b)(6) for failure to state a claim, because it is barred by the good-faith defense to liability for damages that is available to private parties sued under 42 U.S.C. § 1983 who acted in reliance on existing, presumptively valid statutes and judicial precedent (Part II). Furthermore, plaintiffs' alternative attempt to invoke state tort law is also due to be dismissed under Rule 12(b)(6) – both because plaintiffs fail to state a claim for conversion, and because the state-law equivalent of the § 1983 good-faith defense similarly bars any such tort claim for damages (Part III). Finally, we note that one of the three plaintiffs, having been retired and thus not subject to any fair share requirement for over five years (well beyond the two-year limitations period) lacks standing to raise *any* of the claims in this lawsuit; and, because neither of the other two plaintiffs has standing to assert claims against defendant CREA either, that defendant must be dismissed from the action as well (Part IV).

## I.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE MOOT OR OTHERWISE NONJUSTICIABLE

Article III of the Constitution contains important safeguards designed to preserve the separation of powers by "prevent[ing] the judicial process from being used to usurp the powers

of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Thus, the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). A case is nonjusticiable and thus outside the jurisdiction of the federal courts if, *inter alia*, the plaintiff's claims are moot, *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983), or if the plaintiff lacks standing to bring them, *Clapper*, 568 U.S. at 407-08. If, for one of these reasons, "a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

Because the justiciability of plaintiffs' claims "must [be] demonstrate[d] … separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000), we analyze plaintiffs' complaint by looking to each of the claims for relief sought in the Demand for Relief. This analysis shows that all of the complaint's substantive claims – with the exception of paragraph n's demand for repayment of pre-*Janus* fair share fees – are moot or otherwise nonjusticiable, and thus must be dismissed under Rule 12(b)(1).

### A. All Claims for Declaratory or Injunctive Relief with Respect to the Constitutionality or Legality of Fair Share Fees (Including Religious Objector Fees) are Moot as a Result of the Supreme Court's Decision in *Janus* [Demand for Relief ¶¶ c, d, e, f, g, h, i, j, k, l, m, o, p]

The vast majority of the complaint's claims are for declaratory and injunctive relief, asking the Court to declare unconstitutional and enjoin the enforcement of (a) any requirement that nonmembers pay such fees, Demand for Relief ¶¶ c, o, p; (b) various provisions of 71 Pa. Stat. § 575 that establish such a fee requirement, including its provisions allowing nonmembers to make and adjudicate objections to the fee, and permitting religious objectors to pay their fee to a charity instead of to the union, Demand for Relief ¶¶ e, f, g, h, i, j, k, *l*; and (c) any provisions

of collective bargaining agreements that incorporate and implement such fair share requirements, *id.*, ¶ m. The complaint also seeks similar relief as a matter of state tort law, *id.*, ¶ d.

Less than two weeks after the complaint was filed, the United States Supreme Court announced its decision in the *Janus* case, which resolved the question plaintiffs seek to adjudicate here. In *Janus*, the Court overruled its *Abood* precedent and held that the First Amendment prohibited any requirement that public employees pay fair share fees: "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." 138 S. Ct. at 2486.

As explained in greater detail above, as a result of the *Janus* decision, PSEA immediately took steps to cease the collection of fair share fees from all Pennsylvania school employers that had fair-share provisions in their collective bargaining agreements with PSEA local associations. Any such fees that had been pre-collected and were attributable to the period after June 27, 2018 were or will soon be promptly refunded, with interest, to the nonmembers (including religious objectors) who had paid them. Both the Union Defendants and the school districts that were party to collective bargaining agreements containing fair share provisions have stated their intention to comply fully with the *Janus* decision and accordingly not to give further effect to such contract provisions – which they recognize are unenforceable after *Janus* – and letters to this effect were mailed, to all nonmember feepayers (including religious objectors) in Pennsylvania, including plaintiffs Diamond and Schwartz.

In light of the Court's resolution in *Janus* of the question on which plaintiffs seek declaratory and injunctive relief, as well as the immediate and unconditional implementation of that decision by not only the Union Defendants but also by the school district employers, there is

no longer any dispute between the parties over the issue plaintiffs seek to adjudicate. The Union Defendants – along with the relevant public employers – agree that fair share requirements in the public sector are now prohibited by the First Amendment. Because there is no longer any "actual controversy" between the parties, this issue is moot and the Court lacks Article III jurisdiction over plaintiffs' claims. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).[2] Indeed, one court considering a post-*Janus* challenge has already so held. *See Danielson v. Inslee*, No. 3:18-cv-05206-RJB, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018) (holding plaintiffs' claims for declaratory and injunctive relief with respect to agency fee requirements were moot after *Janus* and the cessation of fee collections).

We emphasize that this is not a case in which the "voluntary cessation" exception to the mootness doctrine, *see United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953), has any application, for multiple reasons. First, when a defendant changes its position in response to a change in the law, the cessation of the challenged conduct is not considered "voluntary" for purposes of mootness analysis. *See Smith v. Univ. of Wash.*, 233 F.3d 1188, 1194-95 (9th Cir. 2000) ("[W]hen a change of position is wrought by a statutory provision, the change is neither voluntary nor likely to be resiled from at any time in the foreseeable future."). That is true whether the change of position is in response to a newly enacted statute, *id.*, or – as in this case – the result of a judicial decision, *see Aikens v. California*, 406 U.S. 813 (1972) (per curiam);

---

[2] It bears noting in this connection that plaintiffs' claim for declaratory relief "does not broaden the jurisdiction granted to the federal courts by the Constitution," and accordingly "there still must be a case or controversy before a federal court can assume jurisdiction and reach the merits of a [declaratory judgment action]." *Coalition for Gov't Procurement v. Federal Prison Indus., Inc.*, 365 F.3d 435, 458-59 (6th Cir. 2004) (alteration in original) (internal quotation marks omitted); *see also Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) ("The limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context.").

*Christian Coalition v. Cole*, 355 F.3d 1288 (11th Cir. 2004). *Christian Coalition* is virtually on all fours with this case. It involved a challenge to an opinion of the Alabama Judicial Inquiry Commission stating that a judge standing for election was prohibited from declaring her position on legal and political issues. Subsequently, when the Supreme Court held such prohibitions contrary to the First Amendment, *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), the Commission withdrew its challenged opinion. That changed position in response to an intervening Supreme Court decision, the Eleventh Circuit explained, mooted the case. Because "*White* changed the legal landscape on which the [Commission] initially based its Advisory Opinion," the plaintiff challenging the opinion "can reasonably expect that the [Commission] will not issue another opinion preventing judges from answering the questionnaire at issue in this case." 355 F.3d at 1292-93. So too here: where *Janus* "changed the legal landscape," and defendants responded to that change by immediately ceasing the collection of fair share fees, it cannot reasonably be expected that collection of such fees would be resumed.

Second, the Union Defendants can collect fair share fees only with the active assistance of the school employers in deducting such fees from nonmembers' paychecks and transmitting them to the Union Defendants. And governmental agencies are presumed to follow the law, *see, e.g.*, *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004) (applying presumption in mootness context) – which now prohibits such deduction and transmission of fair share fees. And, quite apart from that legal presumption, it is evident that the school employers will follow the law. Thus, the school districts that employed the three plaintiffs have ceased deducting and transmitting fair share fees and have attested to their intent to comply fully with *Janus*. These assurances by public officials are more than sufficient to establish that the collection of fair share fees would not be resumed – even if the Union Defendants somehow

wanted to defy a decision of the Supreme Court. *See Grutzmacher v. Howard Cty.*, 851 F.3d 332, 349 (4th Cir. 2017) (holding that previous policies were unlikely to be readopted based on "formal assurances" of public officials and "absence of any evidence to the contrary").

Finally, given that all parties agree that *Janus* prohibits fair share fees in the public sector, that the Union Defendants immediately following *Janus* took all necessary steps to ensure that deduction and transmission of fair share fees were halted at once and to escrow and refund those that could not be halted, and that the Union Defendants have represented to this Court that they recognize the unconstitutionality of fair share requirements under *Janus*, "[i]t is unreasonable to think that the Union would resort to conduct" – even assuming that it had the power to do so unilaterally – "that it had admitted in writing was constitutionally deficient and had attempted to correct." *Carlson v. United Academics*, 265 F.3d 778, 786 (9th Cir. 2001).

For all of these reasons, this is a case where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). That being so, there is nothing for this Court to enjoin, and plaintiffs' requests for declaratory and injunctive relief are moot.

As a final point, we note that some of plaintiffs' demands for relief seek to declare unconstitutional and enjoin the enforcement of statutes and provisions of collective bargaining agreements that, in light of the short time since the *Janus* decision, have not been repealed. But it is settled law that "[t]he mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue." *Winsness v. Yocom*, 433 F.3d 727, 732-37 (10th Cir. 2006) (case was moot where prosecutors acknowledged that a Supreme Court decision made the state statute unconstitutional); *see also*,

*e.g.*, *Wisconsin Right to Life v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004) ("[A] case is moot

when a state agency acknowledges that it will not enforce a statute because it is plainly

unconstitutional, in spite of the failure of the legislature to remove the statute from the books.");

*Brown v. Buhman*, 822 F.3d 1151, 1168 (10th Cir. 2016) (same). Plaintiffs' challenges to the

statutes and collective bargaining agreements authorizing fair share fees are thus moot as well.[3]

### B.   Plaintiffs Have No Standing to Seek to Enjoin Provisions Concerning Union Membership [Demand for Relief ¶ q]

The complaint also seeks to enjoin defendants from enforcing any provision of law, of a

collective bargaining agreement, or of a union membership agreement "that prevents or deters

public employees from cancelling their union membership and withdrawing financial support of

the union at any time during the calendar year." Demand for Relief ¶ q. While this claim may not

be moot, it is nonetheless nonjusticiable, for none of the plaintiffs have standing to bring it. As

the complaint itself avers, none of the three plaintiffs are union members, *see* Complaint ¶¶ 14-

16, and thus none of them stands to be affected in the slightest by any legal or contractual

restrictions on union members' ability to resign their membership and terminate their dues

payments "at any time during the calendar year."

It is a fundamental requirement of standing that the plaintiff have suffered, or be

imminently threatened with, an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992). This "injury in fact" requirement cannot be satisfied by showing that someone else

might have suffered or be imminently threatened with an injury: "[T]he 'injury in fact' test

requires more than an injury to a cognizable interest. It requires that *the party seeking review* be

---

[3] It is, of course, immaterial to the mootness analysis that this lawsuit has been brought as
a class action, because "when claims of the named plaintiffs become moot before class
certification, dismissal of the action is required." *Brown v. Philadelphia Housing Auth.*, 350 F.3d
338, 343 (3d Cir. 2003) (quoting *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992)).

himself among the injured." *Id.* at 563 (emphasis added) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)). Plaintiffs, as nonmembers of the union, have neither suffered any injury nor are imminently threatened with any injury arising from legal or contractual restrictions on the right of union members to resign at any time they wish. There is, in short, no "case or controversy" here for the Court to decide.

## II.   PLAINTIFFS' DEMAND FOR REPAYMENT OF FAIR SHARE FEES COLLECTED PRIOR TO *JANUS* IS BARRED BY THE § 1983 GOOD-FAITH DEFENSE TO LIABILITY FOR DAMAGES

Beyond their demands for declaratory and injunctive relief, plaintiffs also ask that the Court order the Union Defendants "to repay all 'fair-share fees' that they unconstitutionally extracted from the representative plaintiffs and their fellow class members." Demand for Relief ¶ n. Any such fees paid after (or attributable to the period after) June 27, 2018, when the Supreme Court held them to be unconstitutional, have been or soon will be returned to the feepayers, with interest, *see* Howlett Decl. ¶ 5, so the demand is moot to the extent it is for repayment of post-*Janus* fees. The complaint, however, also appears to seek repayment of fair-share fees assessed and collected *before* the *Janus* decision – at a time when the Supreme Court's 1977 *Abood* decision upholding fair-share requirements in the public sector was still the law of the land. *See* Complaint ¶ 32 (identifying as a question common to all putative class members whether they "can recover compensatory damages from the PSEA and its affiliates for 'fair-share fees' that were collected before *Janus*").[4]

---

[4] Plaintiffs appear to treat as an open question "whether … any statute of limitations might limit the recovery of class members," Complaint ¶ 32, and indeed they define their putative class to include "everyone who has *ever*" been required to pay fair-share fees to the Union Defendants. *Id.*, ¶ 29 (emphasis added). It is, however, well settled that the limitations period applicable in Pennsylvania to claims brought under § 1983 is two years. *See Trautman v. Lagalski*, 28 F. Supp. 2d 327, 328-29 (W.D. Pa. 1998).

In seeking repayment of fees collected at a time when they indisputably had been held to be fully lawful, plaintiffs apparently plan to invoke the retroactivity analysis in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), and to argue that every Supreme Court decision interpreting the constitution applies retroactively to conduct predating the decision in all circumstances, even when the decision totally overrules the Court's previously articulated understanding of the constitution. According to this argument, actions that were fully constitutional under governing law at the time they were undertaken are said, in retrospect, to have been unconstitutional after all.

The Court has, however, made clear that the retroactivity principles enunciated in *Harper* do not "determine the outcome of the case" when, among other considerations, there is "a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995). Here, the basis for denying the remedy plaintiffs seek is the well established good-faith defense to liability for damages that is available to private parties sued under 42 U.S.C. § 1983.

### A. The Courts – Including the Third Circuit – Have Uniformly Recognized the Availability to Private Parties Sued under § 1983 of a Good-Faith Defense to Liability for Damages

The widespread adoption of the good-faith defense to § 1983 damages actions grew out of two leading Supreme Court decisions addressing the scope of liability for nongovernmental actors under that statute. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982); *Wyatt v. Cole*, 504 U.S. 158, 168 (1992) In particular, when the Supreme Court initially determined in *Lugar* that private actors could, under certain circumstances, be held liable along with their governmental counterparts for violations of § 1983, and, subsequently, when it held in *Wyatt* that such private defendants could not invoke the doctrine of qualified immunity available to their governmental co-defendants in § 1983 damages actions, the Court recognized that "principles of

equality and fairness may suggest … that private citizens … should have some protection from liability, as do their government counterparts," when the private actions held to be unconstitutional had been undertaken pursuant to presumptively valid existing law. *Wyatt*, 504 U.S. at 168. Thus, although not called upon to decide the question in the cases before it, the Court suggested in both *Lugar* and *Wyatt* – in dicta and in separate opinions joined by five members of the Court – the availability of a good-faith defense for nongovernmental defendants sued for damages under § 1983. *Id.* at 168-69; *id.* at 169 (Kennedy, J., joined by Scalia, J., concurring); *id.* at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting); *see also Lugar*, 457 U.S. at 942 n.23. The Court subsequently reiterated this view in *Richardson v. McKnight*, 521 U.S. 399, 413-14 (1997) (citing *Wyatt*, 504 U.S. at 169).

The Court's view, accepted without dissent by all members of the *Wyatt* Court, has subsequently been adopted by every lower court that has ever considered the issue. Thus, on remand from the Supreme Court in the *Wyatt* case, the Fifth Circuit squarely addressed and decided the question of the good-faith defense. Finding that this question "was largely answered by the[] separate opinions" of Justice Kennedy and Chief Justice Rehnquist, the Fifth Circuit held "that private defendants sued on the basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute upon which they relied was unconstitutional." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

In the quarter-century since that decision, four other courts of appeals – including the Third Circuit – have considered the issue, and all have reached the same result. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d Cir. 1994); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Pinsky v. Duncan*, 79

F.3d 306, 311-12 (2d Cir. 1996); *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008); *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016), *cert denied*, 137 S. Ct. 1204 (2017). Not only are the courts of appeals unanimous in holding that nongovernmental defendants sued under § 1983 can raise a good-faith defense, but the same is true of the dozens of district court cases addressing this issue since *Wyatt*.

And that is for good reason. Even though nonbinding, the Supreme Court's discussion of the issue in its dicta and separate opinions in *Wyatt*, *Lugar*, and *Richardson* makes clear the compelling rationale for the good-faith defense, which has been succinctly summarized by one court as follows:

> It would be manifestly unfair to hold that the state actor – whose participation is required for there to be a section 1983 violation at all – is entitled to qualified immunity, but hold the private actor, who did not subjectively believe that he was acting unconstitutionally, liable for the plaintiff's damages.

*Franklin v. Fox*, No. C 97-2443, 2001 WL 114438, at *5 (N.D. Cal. Jan. 22, 2001) (Breyer, J.). Thus, "the Justices who speak of this good faith defense, as well as the circuits that have applied it, were, and are, concerned with the unfairness of imposing damages liability on private defendants whose honest and reasonable belief in the constitutionality of their conduct turns out later to have been mistaken." Sheldon Nahmod, *The Emerging Section 1983 Private Party Defense*, 26 Cardozo L. Rev. 81, 91 (2004).[5]

---

[5] In the same vein, courts that have considered claims for equitable restitution from private parties in similar circumstances have taken account of "the general principle that … state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Americans United v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 427 (8th Cir. 2007) (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 208-09 (1973)). In *Americans United*, while the court of appeals affirmed the district court's holding striking down under the Establishment Clause a government program funding faith-based prison rehabilitation programs, it reversed the lower court's order that funds previously received and expended by the religious organization be repaid. That repayment order, the Eighth

It is, in sum, now well settled that nongovernmental actors sued under § 1983 – while not immune from suit entirely as are government officials under the doctrine of qualified immunity – are entitled to invoke a good-faith defense that shields them from claims for damages.[6]

### B. Reliance on Presumptively Valid State Law and Controlling Supreme Court Precedent in Receiving Fair Share Fees Prior to *Janus* was Objectively Reasonable and thus in Good Faith

The good-faith defense precludes plaintiffs' demand for repayment of fair-share fees paid prior to June 27, 2018, when the Supreme Court announced its decision in *Janus*. There is no dispute that those fees were assessed and received under state law specifically authorizing their assessment. *See* 71 Pa. Stat. § 575. That statute is, as a matter of law, entitled to a presumption of validity. As the Second Circuit has put it, "it is objectively reasonable to act on the basis of a statute not yet held invalid." *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996). The court cited in this connection the venerable holding of *Birdsall v. Smith*, 122 N.W. 626, 627 (Mich. 1909), that under the common law "[e]very statute should be considered valid until there is a judicial

---

Circuit held, was erroneous because the district court "gave no weight to the fact that specific statutes, presumptively valid, authorized the … funding." *Id.*

[6] In some recent cases, litigated subsequent to the Supreme Court's 2014 decision in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), prohibiting fair share requirements for state-compensated home-care workers, it has been argued that the good-faith defense cannot be invoked in First Amendment cases because it is limited to cases where the defendant's state of mind is an element of or defense to the constitutional tort. That contention has been rejected every time it has been raised. *See Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1204 (2017); *Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258, at **5-6 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee*, No. 14-CV-200 (MJP), 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016), *appeal pending sub nom. Routh v. SEIU Healthcare 775NW*, No. 16-35749 (9th Cir.). The contention is incompatible with a central reason for the good-faith defense – to avoid the injustice of holding private parties liable in damages under circumstances where their public-official co-defendants, without whom there could be no § 1983 violation in the first place, would escape liability through qualified immunity. As the court explained in *Winner*, the proposed "limiting principles of scienter or motive are not consistent with the Supreme Court's approach because they would still leave private parties exposed to a damages verdict for relying on seemingly valid state laws that were later held to be unconstitutional." 2016 WL 7374258, at *6.

determination to the contrary." *Pinsky*, 79 F.3d at 313. Similarly, Justice Kennedy relied on *Birdsall* in his *Wyatt* opinion, citing it for the proposition that "a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law." 504 U.S. at 174 (Kennedy, J., concurring). This presumption of statutory validity "ought to allow a defendant to argue that he acted in subjective good faith ...." *Id.*

In this case, moreover, there is far more than a presumption of statutory validity. There is, of course, the *Abood* decision, a controlling Supreme Court precedent dating back over 40 years that explicitly held fair-share statutes to be constitutional under the First Amendment – a precedent that was followed and re-affirmed many times.  *See, e.g.*, *Ellis v. Bhd. of Ry. Clerks*, 466 U.S. 435 (1984); *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991); *Locke v. Karass*, 555 U.S. 207 (2009).

As a matter of law, therefore, the Union Defendants' reliance on Pennsylvania's statutory authorization of fair-share fees, and on controlling Supreme Court precedent upholding such authorization, must be held reasonable and as constituting good-faith reliance. The Third Circuit has held that a private party seeking to invoke the § 1983 good-faith defense need only show "subjective" good faith, "rather than the more demanding objective standard of reasonable belief that governs qualified immunity," *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994), but in this case it is abundantly clear that the "more demanding objective standard of reasonable belief" is met.[7]

---

[7] That being so, any inquiry into the Union Defendants' subjective good faith would be irrelevant, so that the availability of the good-faith defense can be determined as a matter of law on a Rule 12(b)(6) motion to dismiss. Indeed, where "a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable *as a matter of law*," *Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring) (emphasis added), it would make little sense to inquire into what the private individual may have subjectively believed about the constitutionality of the statute upon which it relied.

Because the "objective standard of reasonable belief" is satisfied, it is simply irrelevant whether, as may be argued, it became foreseeable in the wake of nonbinding dicta commenting negatively on *Abood* in *Knox v. SEIU*, 567 U.S. 298 (2012), that *Abood* might be overruled. *Abood* was not overruled in *Knox.* Nor was it overruled in *Harris v. Quinn*, 134 S. Ct. 2618 (2014); indeed, there the Court consciously *declined* to overrule *Abood*, even though that was the principal question briefed by the parties. Thus, while it may be true that, since *Knox*, "public-sector unions have been on notice ... regarding [the Supreme] Court's misgivings about *Abood*," *Janus*, 138 S. Ct. at 2484, the dispositive fact is that prior to *Janus* – and at all times relevant to the good-faith defense issue here – it was *Abood* that was the law of the land, and not any nonbinding commentary on *Abood*. That is clear from *Janus* itself, for the Court there took care to state that the district court in that case had "correctly" dismissed the complaint because it was "foreclosed by *Abood*." 138 S. Ct. at 2462.

The reason why the district court in *Janus* acted "correctly" in following *Abood* is directly pertinent to why the defendants acted in good faith reliance on *Abood* here: "The Supreme Court itself has admonished lower courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court itself 'the prerogative of overruling its own decisions.'" *United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)). *See also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (lower courts "should follow the case which directly controls, leaving to

this Court the prerogative of overruling its own decisions."). Private parties should not be held to a higher standard of prescience than the federal courts.[8]

Indeed, it would be insidious to accept the notion that a private party who relies on a state statute valid under binding Supreme Court precedents of long standing should face the prospect of catastrophic liability merely because nonbinding commentary in a more recent case suggested that the Court might reconsider those precedents. Accepting that notion would threaten to undermine the rule of law itself by eroding the solemnity that does, and should, accompany the overruling of established precedents. The erosion would occur because private parties' fear of massive liability, unleavened by the availability of a good-faith defense, would impel all but the most risk-insensitive private parties to behave as if an actual overruling had occurred and thus to abandon statutory rights that the legislature intended for them to exercise – even though an actual overruling had not occurred and might never occur. *Cf. United States v. Dickerson,* 530 U.S. 428, 438 (2000) (reaffirming *Miranda v. Arizona,* 384 U.S. 436 (1964) despite expressions of misgiving). The effect would be a *de facto* overruling of a Supreme Court precedent through nonbinding commentary rather than through the Supreme Court's careful consideration of whether its precedent should, in fact, be overturned.

In short, the Unions' reliance on a presumptively valid statute authorizing fair-share fees, as well as on controlling Supreme Court precedent upholding such statutes, was objectively reasonable as a matter of law, and the good-faith defense defeats the § 1983 damages claims.

---

[8] By way of analogy, it may be noted in this regard that the standard for applying the doctrine of qualified immunity is a question of law – whether the unconstitutionality of the defendant public official's actions was "clearly established" at the time of the act in question – *see, e.g., Dougherty v. School Dist. of Phila.,* 772 F.3d 979, 993 (3d Cir. 2014), that does not turn on the defendant's ability to forecast what the courts might hold in the future.

### III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION, WHICH – TO THE EXTENT IT SEEKS DAMAGES – WOULD ALSO BE BARRED BY THE GOOD-FAITH DEFENSE

Perhaps recognizing the barrier that the mootness doctrine and the good-faith defense pose to their federal constitutional claims, plaintiffs have added the contention, under state law, that "PSEA has committed the tort of conversion by appropriating the money of the representative plaintiffs and their fellow class members without their consent." Complaint ¶ 28. Read literally, the complaint seeks only declaratory relief on this tort claim, *see* Demand for Relief ¶ d (first clause) – which is moot along with the other claims for declaratory and injunctive relief. The complaint's demand for repayment of pre-*Janus* fees, on the other hand, appears to seek that remedy only on the basis that the fees were "*unconstitutionally* extracted," *id.*, ¶ n (emphasis added), saying nothing about state tort law. In an abundance of caution, however, we explain why, in any event, the conversion theory fails to state a claim upon which any relief can be granted, and then show that, even if there were a viable conversion claim, any attempt to recover pre-*Janus* fees on that basis would be barred by the state-law equivalent of the § 1983 good-faith defense.

### A.    The Complaint Fails to State a Claim for Conversion

As this Court has recently explained, "[u]nder Pennsylvania law, conversion occurs where one deprives another of his right to property in, or use or possession of, a chattel, or otherwise interferes therewith, without consent or justification." *Laborers' Combined Funds v. Jennings*, 323 F.R.D. 511, 519 (W.D. Pa. 2018) (quoting *Richman ex rel. Inst. of Terrorism Research & Response, Inc. v. Perelman*, No. 953 EDA 2014, 2015 WL 3500537, at *7 (Pa. Super. Ct. Apr. 21, 2015)). While there are multiple problems with plaintiffs' attempt to invoke

the law of conversion,[9] one in particular stands out: "[A] claim of conversion cannot be sustained in the face of lawful justification on the part of the asserted tortfeasor." *Pioneer Commercial Funding Corp. v. American Fin. Mortg. Corp.*, 855 A.2d 818, 827 (Pa. 2004). Here, the fees plaintiffs' public employers deducted from their paychecks and transmitted to the Union Defendants were not deducted and transmitted without "lawful justification."

To the contrary, the withholding and transmission of fair-share fees was undertaken pursuant to Pennsylvania law that specifically authorized – indeed, required – such action: "If the provisions of a collective bargaining agreement so provide, each nonmember of a collective bargaining unit shall be required to pay to the exclusive representative a fair share fee." 71 Pa. Stat. § 575 (b). The statute further directed that "[t]he public employer shall deduct the fee … and promptly transmit the amount deducted to the exclusive representative." *Id.*, § 575(c). In light of this state law specifically providing for the deduction and transmission of fair share fees, plaintiffs' argument that following the directions of the law constituted a form of theft – conversion – would seem to be a bad joke. It certainly cannot be said that the fair share funds were deducted and transmitted "without … justification." *Jennings*, 323 F.R.D. at 519.

We recognize, of course, that on June 27, 2018, the United States Supreme Court declared fair share requirements in the public sector to be unconstitutional. Plaintiffs' contention is, apparently, that this decision retroactively rendered without "lawful justification" the transmissions of fair share fees that had taken place in the years prior to that decision. But even

---

[9] For example, to state a claim for conversion the plaintiff must have "had actual or constructive possession of a chattel at the time of the alleged conversion." *Jennings*, 323 F.R.D. at 519. Presumably, on plaintiffs' theory, the alleged conversion took place when the school district employers transmitted to the Union Defendants fair-share payments that they otherwise would have paid to the plaintiffs as part of their paychecks. But plaintiffs clearly had neither actual nor constructive possession of those funds before they were transmitted to the unions.

were one to proceed on the assumption that that the U.S. Supreme Court would apply its decisions retroactively in determining the status under the federal constitution of actions that took place prior to the Court's overruling of a long-standing precedent, *see supra* p. 13, that would not change the fact that – as a matter of Pennsylvania tort law – there existed, in the form of a presumptively valid statute, "justification" for the deduction and transmission of fair share fees at the time (prior to the *Janus* decision) when those fees were deducted and transmitted. Whether the withholding and transmission of the fees was undertaken "without justification," within the meaning of the state law of conversion, is a factual question that is not controlled by the Supreme Court's legal rules about the retroactive application of new constitutional rulings.

Thus, the fact that the authority that justified the defendant's actions was determined after the fact to be unconstitutional does not mean that there existed no "justification" for those actions at the time they were taken. As one federal court has put it, defendants in a lawsuit alleging conversion "cannot be held liable for complying with an order that was valid upon its face, even if that order is later found to be unconstitutional." *Weldon v. Conlee*, No. 1:13-CV-00540-LJO-SAB, 2015 WL 1811882, at *17 (E.D. Cal. Apr. 21, 2015) (towing company's action in following instruction of police officer was not without justification); *see also Tarantino v. Syputo*, No. C 03-03450 MHP, 2006 WL 1530030, at *12 (N.D. Cal. June 2, 2006) (similar).

In short, far from an action taken to appropriate plaintiffs' funds "without justification," the Union Defendants' receipt from the school employers of fair share payments for nonmember feepayers was action undertaken pursuant to state law specifically authorizing precisely that action. Whether, as a matter of federal law, the assessment of fair share fees is considered retroactively unconstitutional, what is relevant for the state law of conversion is that plaintiffs

cannot establish that such assessments were undertaken "without justification," and they thus cannot establish an essential element of the cause of action for conversion.

**B.     Any Claim for Repayment of Fair Share Fees is Barred by the Good-Faith Defense to Liability under State Law**

Even if, moreover, the Union Defendants' receipt of fair share fees at a time when it was authorized by presumptively valid state law should be deemed to amount to conversion, any attempt to hold the Union Defendants liable under that theory for damages (in the form of repayment of pre-*Janus* fees) would still fail. Just as the good-faith defense discussed above shields from such liability under § 1983 private parties who relied in good faith on presumptively valid state law, state courts have long recognized that – as a matter of state law – parties should be able to rely on the presumed validity of statutes and cannot be held liable in damages for actions taken in reliance on such laws, even if subsequently held unconstitutional.[10]

Thus, the Delaware Supreme Court has summarized the holdings of multiple state courts as follows:

> Citizens and public officials have a right to accept the law as it is written until it is repealed or judicially condemned. They are not required to speculate upon the validity of a statute or to act under it at their peril. Until legislatively or judicially excised, a statute is an operative fact. Courts presume every legislative act constitutional and indulge every intendment in favor of validity. No penalty may be visited upon citizens for doing likewise.

*Downs v. Jacobs*, 272 A.2d 706, 707 (Del. 1970) (citing *Lang v. City of Bayonne*, 68 A. 90 (N.J. 1907); *Kimble v. Bender*, 196 A. 409 (Md. 1938); *Austin v. Campbell*, 370 P.2d 769 (Ariz.

---

[10] Indeed, the § 1983 good-faith defense was itself built largely on state law. As Justice Kennedy explained in *Wyatt*, "there is support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law." 504 U.S. at 174 (Kennedy, J., concurring) (citing *Birdsall v. Smith*, 122 N.W. 626, 627 (Mich. 1909)); *see also Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (also citing *Birdsall* in approving the § 1983 good-faith defense).

1962); *Marckel v. Zitzow*, 15 N.W.2d 777 (Minn. 1944); *Michigan City v. Brossman*, 11 N.E.2d

538 (Ind. App. 1937)). *See also State v. Village of Garden City*, 265 P.2d 328, 335 (Idaho 1953)

("An unconstitutional law should not be applied to work a hardship or impose a liability on one

who has acted in good faith and relied on the validity of a statute before the courts have declared

it invalid."); *Butzlaff v. Van Der Geest & Sons, Inc.*, 340 N.W.2d 742, 744 (Wis. Ct. App. 1983)

(same). More recent authority is to the same effect:

> [C]itizens have the right to accept statutory law as written until it is repealed or
> invalidated; citizens are not required to speculate on the constitutionality of a
> statute before acting under it. We, therefore, hold that citizens will not face
> personal liability for acting reasonably and in good faith reliance on the
> provisions of a statute that is later declared unconstitutional.

*Dutch Point Credit Union, Inc. v. Caron Auto Works, Inc.*, 648 A.2d 882, 888 (Conn. App. Ct.

1994); *see also White v. Arkansas Capital Corp./Diamond State Ventures*, 226 S.W.3d 825, 832

(Ark. 2006) (denying restitution remedy where defendants relied in good faith on statute

presumed valid); *Adukia v. Finney*, 735 N.E.2d 174, 177 (Ill. App. Ct. 2000) ("[A] party should

not be penalized for his good-faith reliance on existing law.").

    In sum, even though statutes authorizing fair share fees in the public sector are no longer

constitutional after *Janus*, that change in the law does not permit plaintiffs to seek a damages

remedy for pre-*Janus* fees under the state law of conversion, any more than it does under § 1983.

## IV.   BECAUSE PLAINTIFF ZIEGLER LACKS STANDING TO BRING ANY CLAIM, BOTH SHE AND DEFENDANT CREA MUST BE DISMISSED FROM THE LAWSUIT

    While the complaint avers that plaintiff Sandra Ziegler is a "retired" teacher, Complaint

¶ 16, it does not disclose when she retired. In fact, Ms. Ziegler left her employment with the

Chestnut Ridge School District on June 5, 2013 – more than five years before this lawsuit was

brought. *See* Glass Decl. ¶ 6 & Exh. A. Since the end of the 2012-13 school year she has not

been subject to any requirement that she pay fair share fees (or, as a religious objector, make

equivalent contributions to a charity). *Id.*, ¶ 7. That being the case, Ms. Ziegler has no standing to seek either the prospective or retrospective relief demanded by the complaint. As she is not currently subject to any fair share requirement, she is not threatened with any injury from the prospective enforcement of fair share provisions the complaint seeks to enjoin. Nor does she have standing to seek repayment of any fees previously paid, as any payments she made go back well beyond the two-year limitations periods applicable both to claims under § 1983 and for conversion. 42 Pa. C.S.A. § 5524(1), (3); *see Trautman v. Lagalski*, 28 F. Supp. 2d 327, 328-29 (W.D. Pa. 1998); (§ 1983); *Kingston Coal Co. v. Felton Min. Co.*, 690 A.2d 284, 288 (Pa. Super. Ct. 1997) (conversion). Lacking "a personal stake in the outcome of the controversy," she has no standing to sue. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).[11]

Because plaintiff Ziegler must be dismissed for lack of standing, defendant Chestnut Ridge Education Association must be dismissed as well, as neither of the other two other plaintiffs alleges any claim against it. While the complaint purports to sue CREA as representative of a defendant class of all PSEA local affiliates, Complaint ¶ 8, it cannot be required to remain a defendant in the lawsuit – much less serve as a defendant class representative – if the complaint states no viable claim against it.

## CONCLUSION

Plaintiffs' complaint should be dismissed in its entirety.

---

[11] Should the contention that plaintiff Ziegler's claims for retrospective relief are barred by the statute of limitations be deemed to be properly brought by a motion under Rule 12(b)(6) rather than Rule 12(b)(1), the Court could – if it reaches this issue – take account of the Glass Declaration establishing Ms. Ziegler's retirement date by treating the instant motion, in this limited respect, as a motion for summary judgment and allowing plaintiffs an opportunity to contest that issue of fact. *See* Fed. R. Civ. P. 12(d).

Respectfully submitted,

 /s/ John M. West

JOSEPH F. CANAMUCIO (PA 316335)

Pennsylvania State Education Association

400 North Third Street

P.O. Box 2225

Harrisburg, PA  17105

Tel.: (717) 255-7131

Fax:  (717) 255-7132

jcanamucio@psea.org

LUBNA A. ALAM (DC 982169)*

National Education Association

1201 16th Street N.W.

Washington, DC  20036

Tel.: (202) 822-7035

Fax:  (202) 822-7033

lalam@nea.org

*Admitted *pro hac vice*

JOHN M. WEST (DC 424718)*

LEON DAYAN (DC 44144)*

JACOB KARABELL (DC 996066)*

ADAM BELLOTTI (DC 1020169)*

Bredhoff & Kaiser, PLLC

805 Fifteenth Street N.W., Suite 1000

Washington, DC  20005

Tel.: (202) 842-2600

Fax:  (202) 842-1888

jwest@bredhoff.com

ldayan@bredhoff.com

jkarabell@bredhoff.com

abellotti@bredhoff.com

ROBERT A. EBERLE (PA 47369)

AMANDA B. BUNDICK (PA 316622)

Eberle & Bundick, LLC

P.O. Box 44290

27 Oregon Avenue

Pittsburgh, PA  15205

Tel.: (412) 368-5541

Fax:  (412) 489-0174

bob@eblaborlaw.com

amanda@eblaborlaw.com

*Counsel for Union Defendants*